**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK JACKOWITZ<br><br>    Plaintiff,<br><br>V.<br><br>UNUM GROUP AND UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1.    Plaintiff, Mark Jackowitz, M.D. ("Dr. Jackowitz" or "Plaintiff"), brings this action against the Defendants, Unum Group and Unum Life Insurance Company of America (collectively "Unum" or "Defendants") for breach of contract and breach of the covenant of good faith and fair dealing. The Defendants have engaged in unfair or deceptive acts or practices by denying Dr. Jackowitz, in bad faith, the full amount of benefits he is owed under his individual income replacement Policy ("Policy"), insured and administered by the Defendants.

2.    Specifically, the Defendants are failing to provide Dr. Jackowitz with his insurance benefits as promised under the terms of the Policy.

3.    In denying Dr. Jackowitz's benefits, the Defendants have misrepresented the benefits, advantages, conditions and terms of its Policy in violation of Massachusetts law, in part by misrepresenting pertinent facts of insurance policy provisions relating to coverage at issue, failing to acknowledge and act reasonably promptly upon communications with

respect to claims arising under insurance policies, refusing to pay claims without conducting a reasonable investigation based upon all available information, and failing to effectuate a prompt, fair and equitable settlement of Dr. Jackowitz's claim once its liability for his claim became reasonably clear.

## PARTIES

4.      Dr. Jackowitz resides in Western Massachusetts.

5.      Defendant, Unum Group, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, Tennessee, 37402. Unum Group conducts business in Massachusetts.

6.      Defendant, Unum Life Insurance Company of America ("Unum Life"), is a for-profit corporation with its principal place of business at 2211 Congress Street, Portland, ME 04122.  Unum Life transacts business in Massachusetts and underwrites the Policy under which Dr. Jackowitz is suing. Unum Life is the party responsible for processing Dr. Jackowitz's claim and making a final determination as to Dr. Jackowitz's eligibility for benefits.

7.      The Policy under which Dr. Jackowitz is suing is an individual income replacement policy owned by Dr. Jackowitz and insured and administered by Unum Life.

## STATEMENT OF FACTS

### Insurance Entitlement and Plan Definitions

8.      On September 123, 1987, Unum Life issued the Policy to Dr. Jackowitz.

9.      As part of the underwriting process, Dr. Jackowitz submitted his application for coverage to Unum. As part of this application, Unum asked for Dr. Jackowitz's medical specialty, to which Dr. Jackowitz noted was "Ophthalmology."

10.     At the time he filed a claim with Unum, Dr. Jackowitz was an Ophthalmologist whose primary practice consisted of performing cataract surgeries.

11.     Unum insured Dr. Jackowitz for his specialty occupation as an Ophthalmologist performing surgeries. Although Dr. Jackowitz was unable to perform surgeries at the time he filed his claim, Unum redefined his occupation as an Ophthalmologist, claiming that surgeries were not an integral part of his practice.

12.     Specifically, on October 7, 2013, Unum denied Dr. Jackowitz's claim indicating that he was able to perform the material duties of his occupation.

13.     Dr. Jackowitz appealed Unum's decision on March 27, 2014.

14.     On January 21, 2016, after almost two years of correspondence and the submission of evidence supporting his claim to Unum, Unum upheld its denial of Dr. Jackowitz's claim.

15.     In so doing, Unum defined the "regular occupation" provision in a broader manner than was intended and communicated to Dr. Jackowitz at the time he purchased the Policy, so as to reduce Unum's claim liability. Doing so allows Unum to deny benefits to individuals who are, in fact, incapable of performing the material and substantial duties of the medical specialty occupation they were performing at the time of the onset of the claim.

16.     Such an interpretation lacks basis under the terms of the Policy, and is in violation of law.

17.     Without the ability to perform surgeries, Dr. Jackowitz is not performing the duties of his prior occupation. These material duties are crucial to defining Dr. Jackowitz's specialty occupation, yet they have been all but ignored by Unum.

18.     When conducting its review of Dr. Jackowitz's specialty occupation, Unum relied primarily on the evaluation of Dr. Jackowitz's CPT Codes. Doing so provided a skewed and incomplete view of Dr. Jackowitz's occupation.

19.     The accuracy in utilizing CPT Codes to analyze the material and substantial duties of an occupation, and thus define a physician's specialty, is flawed.

20.     CPT Codes are for medical billing purposes only and pertain to medical procedures that involve and include combined services and treatment administered to a patient. The CPT Codes do not delineate the vocational requirements nor do they reflect any of the traits and characteristics of a medical specialty occupation and the demands and requirements necessary to perform the material and substantial duties of that specialty.

21.     CPT Coding schemes and characteristics of this billing process do not define job characteristics that are required to thoroughly analyze a medical specialty occupation.

22.     An accurate and valid vocational analysis performed by a vocational expert addresses the requirements necessary to perform the material and substantial duties of an occupation utilizing specific occupational criteria as set forth by the U.S. Department of Labor.  CPT codes do not delineate the requirements of an occupation, specific worker traits, or formulate and substantiate a vocational profile; all of which are required to analyze an occupation.

23.     Unum has not provided a reasoned basis, vocational or otherwise, explaining why Dr. Jackowitz is not entitled to benefits under the terms of the Policy.

24.     Unum's analysis of Dr. Jackowitz's "regular occupation" by comparing his CPT codes pre- and post-claim is not supported by the Policy terms and fails to meet vocational standards for analyzing occupations. Had Unum wished to sell a policy that would

engage in a comparison of billable procedures and not occupational duties, it should have indicated so in the definition of regular occupation.  It did not.

25.    Unum's use of CPT Codes is intrinsically flawed in that Unum never provided any baseline with which to compare Dr. Jackowitz's CPT Codes. Unum did not identify what the CPT Codes of a true Ophthalmologist performing surgeries would look like in Unum's eyes, it simply reviewed Dr. Jackowitz's codes and arbitrarily decided that his codes were inadequate to be eligible for benefits.

**Unum's Unprofitable Own Occupation Specialty Policies**

26.    From the late 1970's through the 1980's and into the early 1990's, Unum aggressively marketed own occupation specialty policies that insured against an inability to work in one's own specialty occupation.  It was the capacity to engage in a specific occupation, as opposed to the loss of income itself, that was marketed, sold and insured – the ability to work in a different occupation or to derive income from other sources was irrelevant under these policies.

27.    The target market for these policies was high income earners who could afford the high premiums, including doctors.

28.    Policies which permitted the insured to work in a different occupation but still collect benefits were sold at a high premium. Like the other doctors who bought these policies, Dr. Jackowitz faithfully paid Unum premiums year after year to protect himself and his family if the worst case scenario occurred – the inability to work as an Ophthalmologist performing surgeries due to sickness or illness.

29.    In September 2003, the Department of Labor and state regulators began a joint examination of claim files, claims administration and policy manuals from Unum and its

subsidiaries to determine if its claims handling practices reflected systemic unfair claim settlement practices.

30.    The examiners found several areas of concern, including excessive reliance upon in-house medical professionals, unfair construction of attending physician or independent medical exam reports, failure to evaluate the totality of the claimant's condition, and inappropriate burdens placed on claimants to justify their eligibility for benefits. The result was a plan of corrective action implemented through a regulatory settlement agreement ("RSA") and consent orders entered into with 49 states.

31.    A separate agreement entered into with the State of California, detailed some of Unum's bad faith claims handling, including the following provisions directly relevant to Unum's handling of Dr. Jackowitz's claim:

- Mischaracterizing the claimant's occupation and/or its duties in determining whether the claimant is disabled from performing with reasonable continuity the substantial and material duties of his or her own occupation;
- Determining predominantly through an analysis of billing records that medical specialists are able to perform his or her 'own occupation' even though unable to perform with reasonable continuity the substantial and material duties of the specialty itself (e.g., surgery, delivering babies, chiropractic, etc.) …

32.    Allegations of Unum's bad faith claims handling in Dr. Jackowitz's case is supported by the fact that its actions here violate the RSA, and reflect the same practices that lead to the creation of the RSA and the State of California settlement.

**Dr. Jackowitz's Damages**

33.    Due to the unlawful denial of benefits under the terms of the Policy, Dr. Jackowitz has lost the total amount of his rightful benefits, for which he has paid premiums since 1987, in reliance on assurances from Unum that his medical specialty was protected and that if

unable to work in that specialty, he would be entitled to the full amount of his benefit.

34.    Unum's withholding of Dr. Jackowitz's benefits, and the unfair manner in which his claim has been administered resulted in significant stress and anguish.

35.    Unum's unjust and wrongful withholding of funds and unreasonable and bad faith claims procedures have caused Dr. Jackowitz severe emotional distress, including but not limited to anxiety and stress.

36.    Due to the unlawful denial of benefits, Dr. Jackowitz has lost the full amount of his rightful benefits.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**
**(ALL DEFENDANTS)**

37.    Dr. Jackowitz realleges each of the paragraphs above as if fully set forth herein.

38.    Dr. Jackowitz's first claim is for breach of contract.

39.    Dr. Jackowitz entered into a valid contract with the Defendants for the provision of insurance, in the event that he required such insurance.

40.    Dr. Jackowitz fulfilled the terms of the contract by remitting premium payments on an annual basis, as required under the terms of the Policy.

41.    Defendants have failed to provide Dr. Jackowitz with the benefits he is due under the terms of the contract.

42.    The Defendants, by denying Dr. Jackowitz benefits based on its utilization of CPT Codes to define Dr. Jackowitz's medical specialty, breached its duties and obligations under its contract with Dr. Jackowitz, resulting in monetary injury to Dr. Jackowitz.

43.  Dr. Jackowitz has been damaged by reason of the Defendants' breach of contract and is entitled to recover from Defendants the full amount of his benefits due to him under the terms of the Policy.

### SECOND CAUSE OF ACTION
#### (Breach of Implied Covenant of Good Faith and Fair Dealing)
#### (ALL DEFENDANTS)

44.  Dr. Jackowitz realleges each of the paragraphs above as if fully set forth herein.

45.  The Defendants' breached the implied covenant of good faith and fair dealing by failing to act in good faith when making determinations regarding Dr. Jackowitz's claim for benefits.

46.  As a direct and foreseeable consequence of said breach, Dr. Jackowitz has been damaged.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)  Declare, adjudge and decree that Dr. Jackowitz is entitled to recover benefits under the terms of his Policy.

(2)  Award Dr. Jackowitz his full amount of benefits under the terms of the Policy in an amount which this Court shall determine to be necessary and proper to compensate Plaintiff for his injuries together with pre-judgment interest from the date of breach of contract, post-judgment interest, reasonable attorneys' fees, and costs;

(3)  Award punitive damages against Defendants for violating the covenant of good faith and fair dealing implied in both Policies and engaging in bad faith insurance practices;

(4)   Award multiple damages, attorneys' fees, costs and interest against the Defendants;

(5)   Order that the Defendants make restitution to Dr. Jackowitz in the amount of all losses sustained by Dr. Jackowitz as a result of the wrongful conduct alleged herein, together with prejudgment interest; and

(6)   Award such other relief as the Court deems just and reasonable.

Date:  November 30, 2016                    Respectfully submitted,

                                           MARK JACKOWITZ, MD
                                           By his attorney,


                                           /s/ Mala M. Rafik
                                           Mala M. Rafik
                                           BBO No. 638075
                                           ROSENFELD RAFIK & SULLIVAN
                                           184 High Street, Suite 503
                                           Boston, MA 02110
                                           T: 617-723-7470
                                           F: 617-227-2843
                                           E:  mmr@rosenfeld.com